IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:23-cv-00040-BO

| | |
|---|---|
| THOMAS HOBBS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

### UNITED STATES' RESPONSE TO PLAINTIFF'S MOTION TO STRIKE

Plaintiff has moved to strike several of the affirmative defenses in the United States' Answer. The United States respectfully submits that this Court should stay its consideration of Plaintiff's Motion to Strike in light of the full Court's forthcoming plan for coordination of these matters, including a potential master complaint and responsive pleading process, which would obviate the need to consider the pending motion. Order, *In re: Camp Lejeune Water Litigation*, 7:23-cv-897 (E.D.N.C. April 25, 2023). If this Court is not inclined to stay its consideration of Plaintiff's Motion to Strike, then this Court should deny Plaintiff's Motion. Contrary to Plaintiff's position, recent decisions hold that federal pleading standards under *Twombly/Iqbal* do not apply to affirmative defenses, and the United States' defenses do not conflict with the language in the Camp Lejeune Justice Act of 2022 ("CLJA"), Pub. L. No. 117-168, § 804, 136 Stat. 1802, 1802-04 (2022).

### NATURE OF THE CASE

Plaintiff filed this tort action pursuant to the CLJA.

1

## STATEMENT OF FACTS

On August 10, 2022, President Biden signed the Honoring our Promise to Address Comprehensive Toxics Act of 2022 ("PACT Act"), Pub. L. No. 117-168, 136 Stat. 1759 (2022). Section 804 of the PACT Act is the CLJA concerning tort claims related to harm allegedly caused by exposure to water at Camp Lejeune, North Carolina. Under the CLJA, any individual who resided, worked, or was otherwise exposed to water at Camp Lejeune for not less than 30 days between August 1, 1953, and December 31, 1987, is permitted to sue the United States for appropriate relief in the Eastern District of North Carolina, after complying with CLJA's administrative exhaustion requirement. CLJA § 804(b), (d) & (h).

Since the passage of the CLJA, the Navy has received tens of thousands of claims. Based on the information currently available, most of these claims appear to seek a set amount between $20 million and $50 million in damages, though some claims seek as low as hundreds of thousands of dollars and others as high as $100 million in damages.[1] Given the sheer volume of claims and damages at issue, evaluating and resolving CLJA claims would be a significant undertaking even with perfect information available about each claim. Here, the process is more challenging, however, because numerous claims submitted to the Navy do not provide basic, threshold individualized information necessary to evaluate a claim. This is also demonstrated in many of the CLJA complaints pending before the Court.

---

[1] As Judge Dever recognized during the April 5, 2023, status conference, there could be up to one million CLJA claims filed. *See, e.g., Reese v. United States*, 4:23-cv-22 at Dkt. 12, p. 8 ([T]here may be a million cases coming to the Eastern District of North Carolina."). If a million claimants were each to seek one million dollars on average, the total damages at issue would reach one trillion dollars. However, many CLJA claimants appears to be seeking damages in amounts far greater by multiples.

As of this filing, about 993 CLJA lawsuits are pending before the four judges in the Eastern District of North Carolina with about 237 of these CLJA lawsuits pending before Judge Boyle. Of all CLJA lawsuits filed to date, about one-third of the complaints – 327 of total lawsuits and 80 lawsuits pending before Judge Boyle – do not allege a specific injury at issue, much less details about when the alleged injury was diagnosed or the basis for alleging that the unidentified injuries were caused by exposure to contaminated water at Camp Lejeune. Likewise, these complaints do not to identify details about when, where, or for how long the claimant resided, worked, or was otherwise exposed to water at Camp Lejeune. Plaintiff's Complaint in this case is no exception.

Judge Dever recognized as much in the status conference held on April 5, 2023, in all CLJA cases then assigned to him. *See, e.g.*, *Reese v. United States*, 4:23-cv-22 at Dkt. 7, 10 (order setting & minute entry for hearing). During the status conference, Judge Dever noted that nearly half of his cases at the time "just use a catchall without specificity of multiple, serious, life-threatening illnesses" and that "most people most of the time [are] not specifying the date of exposure which certainly would be a helpful piece of information." *Id.* at Dkt. 12, pp. 7, 15. Judge Dever asked counsel for the United States: "Do you anticipate motions to dismiss in connection with these cases… ?" *Id.* at Dkt. 12, p. 15. Counsel for the United States responded at the time that "[w]hat might be helpful in this litigation were if there was some type of master pleading that the Government could respond to…[w]hereas in a lot of cases like this there is a master complaint with individual supplements or appendences that make it easier for the Government to raise global issues that would normally be raised in individual motions to dismiss." *Id*. After speaking to the practical limitations on the Court's ability to proceed through the anticipated volume of CLJA cases individually, Judge Dever indicated that some sort of

3

global management order applicable to all CLJA cases would likely issue. *Id.* at Dkt. 12, pp. 12-13.

In light of the guidance provided during the April 5, 2023, status conference, the United States filed motions to extend all responsive pleading deadlines in CLJA cases pending the Court's appointment of plaintiff leadership and consideration of potential global case management procedures. Judges Dever, Myers II, and Flanagan extended the time for the United States to answer or otherwise respond to CLJA complaints until at least June 23, 2023. *See, e.g.*, Text Order, *Williams et al v. United States*, 7:23-cv-22 (E.D.N.C. May 1, 2023) (noting an extension in all CLJA cases assigned to Judge Dever to June 23, 2023); Text Order, *Agee v. United States*, 7:23-cv-00033 (E.D.N.C. May 3, 2023) (noting an extension in all CLJA cases assigned to Judge Myers to June 23, 2023; Text Order, *Girard v. United States*, 7:23-cv-120 (E.D.N.C. Jun. 9, 2023) (noting an extension in all CLJA cases assigned to Judge Flanagan to June 23, 2023).[2] Judge Boyle ruled orally that it was "not readily apparent that the Government needs additional time" and gave the United States until April 30, 2023, to answer the CLJA complaints that were otherwise due before that date. *See*, *e.g.*, Oral Order, *Akers v. United States*, 7:23-cv-120 (April 17, 2023).

Then, on April 25, 2023, the judges of this Court jointly issued an initial case management order announcing a Master Docket for CLJA cases. *In re: Camp Lejeune Water Litigation*, No. 7:23-cv-00897-RJ, at Dkt. 1 (April 25, 2023). In addition to inviting submissions from those interested in serving as plaintiff leadership, the order announced that the Court

---

[2] As a result, in the 741 CLJA cases assigned to the Hons. James C. Dever, Louise W. Flanagan, and Richard E. Myers II, the date by which the United States must answer or otherwise respond to CLJA complaints has not yet passed, and the United States has not answered or otherwise responded.

4

anticipates streamlining litigation across CLJA cases, including by creating a master complaint and master answer or other responsive pleading. The Court specifically stated:

> [T]he court anticipates seeking input from the plaintiffs on creating a master complaint, input from the defendant on a master answer or other responsive pleading to the master complaint[.]

*Id.*[3] No further proceedings have taken place to date. The United States agrees that global case management procedures focused on cases likely to be representative of the larger CLJA case pool would enhance the prospects of a global resolution. However, moving cases through discovery and trial on a first-filed basis will not enhance the prospects of an efficient global resolution.

As of this filing, the United States has answered or otherwise responded in approximately 189 CLJA cases assigned to Judge Boyle, including filing an answer to Plaintiff's Complaint in this case. Each of the United States' answers triggered the start of a 21-day period for the plaintiff to file motions to strike affirmative defenses under Rule 12. *See* Fed. R. Civ. P. 12(f)(2). Starting May 18, 2023, CLJA plaintiffs began filing motions to strike defenses pleaded in the United States' answers. To date, the plaintiffs in 124 of the 189 answered cases have filed motions to strike affirmative defenses, including Plaintiff in this case.

## STANDARD OF REVIEW

"Motions to strike are generally disfavored in this circuit…'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory

---

[3] Prior to the Court's April 25 Order, the United States and several plaintiffs had filed joint motions for coordination or partial consolidation in CLJA cases assigned to Judge Boyle. *See, e.g.*, *Partain v. United States*, 7:23-cv-110 at Dkt. 9 (March 23, 2023). In light of the April 25 Order, the Court issued text orders denying those motions. *Id.* at May 17, 2023 text order ("In light of the Order filed in the case styled, *In re: Camp Lejeune Water Litigation*, No. 7:23-cv-00897-RJ ("Master Docket Order") [DE 1], the joint motion for coordination or partial consolidation (9) is DENIED.").

tactic.'" *Johnson v. Wal-Mart Associates, Inc.*, No. 5:21-CV-198, 2021 WL 2954404, at *1 (E.D. N.C. Jul. 13, 2021) (Boyle, J.) (quoting *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001)).

## ARGUMENT

A. <u>The Pending Motion May be Obviated by Forthcoming Global Case Management Procedures and Early Resolution Will Lead to Inconsistent Rulings.</u>

Plaintiff's Motion to Strike should be stayed to avoid potentially inconsistent rulings by the Court on issues raised in individual motions to strike across multiple cases. This is a serious concern because, as discussed below, the judges of this Court have not agreed on the pleading standard for affirmative defenses. Plaintiff argues that the United States' defenses "if not struck by the Court here with a ruling applicable to all Camp Lejeune complaints . . . [will] [f]rustrate the efficient administration of this litigation." Motion to Strike, p. 5. However, just the opposite is true. If Plaintiff's Motion to Strike is granted based on the assertion that the United States' Answer fails to meet the *Twombly/Iqbal* standards, it will likely lead to inconsistent decisions across the CLJA litigation (based on prior rulings by other judges on this court), which would frustrate the efficient administration of this litigation. The Court should thus stay Plaintiff's Motion to Strike and allow the master complaint and responsive pleading process contemplated in the Court's April 25, 2023, initial case management order to proceed. This process enables the Court to issue a single, global ruling on legal issues arising across multiple cases, avoiding the possibility of internally inconsistent opinions. It would also preserve the resources of the Court and the parties that would otherwise be required for the litigation and adjudication of these issues across multiple cases.

B. <u>This Court Should Deny Plaintiff's Motion to Strike the United States' Defenses for Allegedly Failing to Satisfy Federal Pleading Standards</u>

Plaintiff asks the Court to strike the United States' First, Second, Third, Eleventh, Twelfth, Thirteenth, and Fourteenth defenses as failing to satisfy federal pleading standards. Motion, Dkt. 13, *passim*. In doing so, Plaintiff relies on this Court's decision in *McGinity v. USAA Fed. Sav. Bank*, No. 5:19-CV-560-BO, 2020 WL 1867386, at *1 (E.D.N.C. Apr. 14, 2020) (Boyle, J.), in which the Court found that the *Twombly*/*Iqbal* analysis applies to affirmative defenses – an issue on which courts within and outside the Fourth Circuit remain split. Plaintiff's Motion to Strike should be denied because (1) the majority view is that the *Twombly*/*Iqbal* analysis should not apply to the defenses pleaded in an answer, and (2) even if the *Twombly/Iqbal* analysis should typically apply to answers, it would not apply in mass tort action like the CLJA litigation.

As an initial matter, Plaintiff's Motion to Strike should be denied because courts have moved away from applying *Twombly*/*Iqbal* pleading standards to affirmative defenses in recent years. *See*, *e.g.*, February 2023 Update to Federal Rules of Civil Procedure, Rules and Commentary Rule 8 ("More recently, however, the trend has been to hold that the *Twombly*/*Iqbal* pleading standards do not apply to the pleading of affirmative defenses… [t]he better view on this question is that the plausibility standard should not apply to affirmative defenses."). Notably, the *McGinity* decision on which Plaintiff relies cited to Judge James Fox's 2010 decision in *Racick v. Dominion Law Assoc.*, 270 F.R.D. 228 (E.D.N.C.) (Fox, J.), finding that the *Twombly/Iqbal* standards apply to affirmative defenses. See *McGinity*, 2020 WL 1867386, at *1. However, Judge Fox changed course just a few years later in 2015 and declined to apply the *Twombly*/*Iqbal* standards to affirmative defenses:

> [T]he Fourth Circuit has not ruled on whether *Iqbal*/*Twombly* applies to answers and affirmative defenses. Nor has any other circuit court. This court finds more recent district court decisions on the matter to be persuasive and adopts their reasoning.

7

> Defendants do not have the same luxury of time that plaintiffs get in drafting complaints, and the requirements of Federal Rule of Civil Procedure 8(a), as discussed in *Iqbal*/*Twombly*, differ from the requirements of subsections (b) and (c). Therefore, this court now declines to apply the *Iqbal*/*Twombly* pleading standard to affirmative defenses and instead evaluates them under the standards set forth in Rule 8(b) and (c).

*Microspace Commc'n Corp. v. Guest Tek Interactive Entert.*, Ltd., No. 5:14-cv-535-F, 2015 WL 4910134, at *4-5 (E.D.N.C. Aug. 17, 2015) (Fox, J.) (citations omitted).

Likewise, Judge Flanagan has repeatedly declined to apply *Twombly*/*Iqbal* to affirmative defenses. Like Judge Fox, Judge Flanagan has distinguished Rule 8(a), which applies to pleadings stating a claim for relief and requires a "showing that the pleader is entitled to relief," from Rule 8(b), which applies to defenses and only requires a party to "state in short and plain terms its defense to each claim asserted against it." In a 2019 decision, Judge Flanagan stated:

> This court repeatedly has held that the *Twombly*/*Iqbal* pleading standard does not apply to affirmative defenses…In those decisions, the court compared the distinct requirements imposed by Fed. R. Civ. P. 8(a)(2), which governs a plaintiff's complaint, to those imposed by Fed. R. Civ. P. 8(b) and 8(c), which govern defenses and affirmative defenses. "Federal Rules of Civil Procedure 8(b) and 8(c) ... require only that a party state in short and plain terms its defenses to each claim asserted against it and affirmatively state any avoidance or affirmative defense. This language differs markedly from the language of Rule 8(a)(2), which requires a short and plain statement of the claim showing that the pleader is entitled to relief.' This court concluded that the distinction "sensibly reflects the differing situations of the plaintiffs and defendants, in that plaintiffs have more time to develop factual support for their contentions and defendants are not responsible for unlocking the doors of discovery as are plaintiffs."

*Liles v. Wyman*, No. 7:18-cv-210-FL, 2019 WL 5677930, at *3 (E.D.N.C. Oct. 31, 2019) (Flanagan, J.) (citations omitted).

8

Most recently, Magistrate Judge Numbers declined to apply the *Twombly*/*Iqbal* standards to affirmative defenses in a 2021 decision. *Edwards v. CSXT Transportation, Inc.*, 338 F.R.D. 590, 592-93 (E.D.N.C. 2021). In doing so, Magistrate Judge Numbers offered similar reasons:

> [Plaintiffs'] first argument tries to apply the *Twombly* and *Iqbal* pleading standard to affirmative defenses. But those cases focused on the Federal Rules' requirement that a party bringing a claim show that they are entitled to relief. The Rules contain no similar requirements for affirmative defenses, so it would be inappropriate to extend *Twombly* and *Iqbal* to affirmative defenses.
>
> ****
>
> And what about the imbalance this rule creates in the pleading standards for plaintiffs and defendants? Courts who have applied *Twombly*/ *Iqbal* to affirmative defenses have found that it was appropriate based on concerns "of fairness, common sense and litigation efficiency[.]" These are all important interests that our legal system should strive to achieve. But courts are bound by the Rules of Civil Procedure, which do not require the same level of factual support for claims and defenses. If this offends notions of fairness, common sense, or litigation efficiency, that is a matter for the Supreme Court and Congress to address.

*Id.* In a footnote Judge Numbers cited numerous decisions of district courts in the Fourth Circuit reaching the same conclusion, making this the "majority" position. *Id.* at 593 n. 1. As the district court of Maryland explained, "A plaintiff's complaint invokes the jurisdiction of the court and seeks affirmative relief. An affirmative defense does neither; consequently, it is reasonable to interpret the wording of Rule 8(b) and (c), which govern defenses and affirmative defenses, differently from the interpretation given by the Supreme Court to the distinctive wording of Rule 8(a) applicable to claims for relief." *LBCMT 2007-C3 Urbana Pike, LLC v. Sheppard*, 302 F.R.D. 385, 387 (D. Md. 2014). Numerous other courts across the country have declined to apply the *Twombly*/*Iqbal* standards to affirmative defenses. *See, e.g.*, *Leviton Manufacturing Co. v. Pass & Seymour, Inc.*, 264 F. Supp.3d 421, 427 (E.D.N.Y. 2017) ("The overwhelming majority view, to which I subscribe, is that the concept of plausibility has no

application to affirmative defenses."); *Ayotte v. Boeing Co.*, 316 F. Supp.3d 1066, 1076 (N.D. Ill. 2018) ("[A]n affirmative defense need not be plausible to survive, and must merely provide fair notice of the issue involved"); *Rosen v. Masterpiece Marketing Group*, LLC, 222 F. Supp.3d 793, 802 (C.D. Cal. 2016) ("Requiring defendants to satisfy the [*Twombly/Iqbal*] pleading standard within twenty-one days of being served with a complaint neither accords with the language of Rules 8(c) and 12(f), nor appears just as a matter of policy."). Thus, applying the *Twombly/Iqbal* standards to affirmative defenses is no longer the majority position as Plaintiff contends.

But even if the *Twombly/Iqbal* analysis were to apply in a typical individual civil case, it would not apply in a mass tort action. While Plaintiff relies on this Court's decision in *McGinity*, that case was decided in the context of a single plaintiff case, with no mass tort backdrop, like the CLJA litigation. The United States Supreme Court has recognized that in mass torts or multi-district litigation, "[p]arties may elect to file a 'master complaint" and a corresponding 'consolidated answer,' which supersede prior individual pleadings." *Gelboim v. Bank of America Corp.*, 574 U.S. 405, 413 n.3 (2015). Recognizing the need for efficiency and to ease administrative burdens, district courts handling mass tort cases routinely allow defendants to plead defenses in answers to master complaints without the level of specificity required under the *Twombly/Iqbal* standards. *See*, *e.g.*, Answer and Affirmative Defenses to Master Long Form Complaint, *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 2:14-mn-02502-RMG, Dkt. 186 (D. S.C. Jun. 9, 2014) (Gergel, J.); Amended Master Long Form and Additional Defenses, *In Re: Zimmer NexGen Knee Implant Prod. Liab. Litig.*, Case No. 1:11-cv-05468, Dkt. 273 (N.D. Ill. Mar. 19, 2012) (Pallmeyer, J.).

10

Accordingly, Plaintiff's Motion to Strike the United States First, Second, Third, Eleventh, Twelfth, Thirteenth, and Fourteenth Defenses should be denied.[4]

C. <u>This Court Should Deny Plaintiffs' Motion to Strike the United States' Affirmative Defenses for Allegedly Conflicting with the CLJA</u>.

Plaintiff also requests that the Court strike two affirmative defenses as conflicting with the statutory language of the CLJA. Motion to Strike, p. 7-9. Specifically, Plaintiff asks the Court to strike the United States' Seventh defense, which states as follows:

> The United States is entitled to a setoff or credit for the amount paid and the value of services rendered to Plaintiff by any disability award, payment, or benefit provided to the individual or legal representative, including but not limited to any award, payment, or benefit provided under any program under the laws administered by the Secretary of Veterans Affairs, under the Medicare program under title XVIII of the Social Security Act, or under the Medicaid program under title XIX of the Social Security Act.

U.S. Answer, Dkt. 11, p. 8. Plaintiff argues that the United States "seeks to setoff amounts paid to Plaintiff *irrespective* of the payment's connection with Camp Lejeune's water, in violation of the limitation set forth in Section 804(e)(2)(B)" and that it "seeks to set off the '*value of services rendered* to Plaintiff,' which appears to be an attempt to offset Plaintiff's recovery by more than the 'amount of any disability award, payment, or benefit provided to' Plaintiff." Motion to Strike, p. 8 (emphasis within). In the interest of clarity and on further examination of the language in the Seventh defense, the United States is willing amend this defense to tailor it to awards, payments, and/or benefits provided in connection with Camp Lejeune.

---

[4] Regardless of whether the *Twombly*/*Iqbal* standards apply to affirmative defenses, there is no question that those standards apply to the allegations of Plaintiff's Complaint. As recognized by Judge Dever during the April 5, 2023, status conference, many CLJA complaints in this litigation fail to provide basic information about a plaintiff's exposure or injury claims. The United States reserves the right to challenge the allegations of Plaintiff's complaint under Fed. R. Civ. P. 12(c).

11

Plaintiff also asks the Court to strike the United States' Eighth defense, which states: "Plaintiff is barred from recovering for services or care which the United States has already paid." U.S. Answer, Dkt. 11, p. 9. Plaintiff argues that the United States "seeks to create an entirely new offset provision altogether" and that "[i]n contrast to Section 804(e)(2)'s plain terms, [it] seeks to bar Plaintiff from recovering for services paid *beyond* Veterans Affairs programs, Medicare, and Medicaid." Motion to Strike, p. 8 (emphasis within). However, the legal basis for this defense is the United States Supreme Court's decision in *Brooks v. U.S.*, 337 U.S. 49, 54 (1949). In *Brooks*, the Supreme Court determined that a federal "gratuity death payment to [a servicemember's] survivors" was a potential offset or deduction in a tort action. *Id*. at 54. In doing so, the Supreme Court stated:

> [W]e now see no indication that Congress meant the United States to pay twice for the same injury. Certain elements of tort damages may be the equivalent of elements taken into account in providing disability payments. It would seem incongruous, at first glance, if the United States should have to pay in tort for hospital expenses it had already paid, for example. And whatever the legal theory behind a wrongful death action, the same considerations might apply to the Government's gratuity death payment to Arthur Brooks' survivors, although national service life insurance might be considered a separate transaction, unrelated to an action in tort or other benefits.

*Brooks* was in existence when the CLJA was passed, does not conflict with the CLJA's plain language, and remains good law today. Thus, the Court should deny Plaintiff's request to strike the United States' Eighth defense and deny Plaintiff's Motion to Strike.

## **CONCLUSION**

12

For the foregoing reasons, this Court should stay its consideration of Plaintiff's Motion to Strike. Otherwise, Plaintiff's Motion to Strike should be denied because recent case law holds that federal pleading standards under *Twombly/Iqbal* do not apply to affirmative defenses, and the United States' defenses do not conflict with the language in the CLJA.

Dated: June 15, 2023   Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch

BRIDGET BAILEY LIPSCOMB
Assistant Director

ADAM BAIN
Senior Trial Counsel

ELIZABETH K. PLATT
ALLISON M. O'LEARY
Trial Attorneys


*/s/ Haroon Anwar*
HAROON ANWAR
Trial Attorney, Torts Branch
Environmental Torts Litigation Section
United States Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail: haroon.anwar@usdoj.gov
Telephone: 202-305-3661
Fax: 202-616-4473

Attorney inquiries to DOJ regarding CLJA:
(202) 353-442

13

## CERTIFICATE OF SERVICE

    I hereby certify that on June 15, 2023, a copy of the foregoing document was served on all counsel of record by operation of the court's electronic filing system and can be accessed through that system.

                                      */s/ Haroon Anwar*
                                      HAROON ANWAR

14

Case 7:23-cv-00040-BO-RN   Document 17   Filed 06/15/23   Page 14 of 14