THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| Shine v. United States of America 7:23-cv-23 | ) | |
| Johnson v. United States of America 7:23-cv-30 | ) | |
| Guinn v. United States of America 7:23-cv-72 | ) | **REPORT OF THE PARTIES'** |
| Tomilson v. United States of America 7:23-cv-63 | ) | **PLANNING MEETING** |
| Holmes v. United States of America 7:23-cv-29 | ) | Fed. R. Civ. P. 26(f) |
| Green v. United States of America 7:23-cv-116 | ) | |
| Glover v. United States of America 7:23-cv-114 | ) | |
| McClain v. United States of America 7:23-cv-73 | ) | |
| Benson v. United States of America 7:23-cv-96 | ) | |
| Breen v. United States of America 7:23-cv-83 | ) | |
| Brooks, Jr. v. United States of America 7:23-cv-89 | ) | |
| Brundage v. United States of America 7:23-cv-62 | ) | |
| Clark v. United States of America 7:23-cv-99 | ) | |
| Luthy v. United States of America 7:23-cv-93 | ) | |
| Palumbo v. United States of America 7:23-cv-74 | ) | |
| Perry v. United States of America 7:23-cv-103 | ) | |
| Richards v. United States of America 7:23-cv-94 | ) | |
| Warren v. United States of America 7:23-cv-91 | ) | |
| Wax v. United States of America 7:23-cv-84 | ) | |
| Weiner v. United States of America 7:23-cv-95 | ) | |
| Akers v. United States of America 7:23-cv-00120 | ) | |
| Hillard v. United States of America 7:23-cv-317 | ) | |
| Trott v. United States of America 7:23-CV-204 | ) | |
| Danekas v. United States of America 7:23-cv-420 | ) | |
| Nelson v. United States of America 7:23-CV-64 | ) | |
| Bailey v. United States of America 7:23-cv-151 | ) | |
| Bailey v. United States of America 7:23-cv-149 | ) | |
| Loftus v. United States of America 7:23-cv-140 | ) | |

1

Weeks v. United States of America 7:23-cv-154 )

Daily v. United States of America 7:23-cv-173 )

Fitzpatrick v. United States of America 7:23-cv-172 )

Jackson v. United States of America 7:23-cv-200 )

Puletz v. United States of America 7:23-cv-197 )

Oller v. United States of America 7:23-cv-208 )

Walker v. United States of America 7:23-cv-216 )

Pingree v. United States of America 7:23-cv-223 )

McFadden v. United States of America 7:23-cv-222 )

Alvarado v. United States of America 7:23-cv-225 )

Blackman v. United States of America 7:23-cv-239 )

Boggess v. United States of America 7:23-cv-242 )

Holsclaw v. United States of America 7:23-cv-255 )

Sanders v. United States of America 7:23-cv-247 )

Unterberg v. United States of America 7:23-cv-252 )

Sowders v. United States of America 7:23-cv-259 )

Cotterell v. United States of America 7:23-cv-260 )

Orue v. United States of America 7:23-cv-277 )

Linde v. United States of America 7:23-cv-288 )

Shaw v. United States of America 7:23-cv-298 )

Sordello v. United States of America 7:23-cv-295 )

Snyder v. United States of America 7:23-cv-291 )

Thomasson v. United States of America 7:23-cv-299 )

Greenlee v. United States of America 7:23-cv-304 )

Spelatis v. United States of America 7:23-cv-305 )

Mills v. United States of America 7:23-cv-306 )

Peabody v. United States of America 7:23-cv-316 )

Melione v. United States of America 7:23-cv-347 )

Prestley v. United States of America 5:23-cv-143 )

Ferrier v. United States of America 7:23-cv-364 )

Ringler v. United States of America 7:23-cv-365 )

Southwick v. United States of America 7:23-cv-388 )

Souza v. United States of America 7:23-cv-389 )

McIntyre v. United States of America 7:23-cv-345 )

Ridgely v. United States of America 7:23-cv-327 )

Ossman v. United States of America 7:23-cv-358 )

Hanks v. United States of America 7:23-cv-377 )

Bluette v. United States of America 7:23-cv-335 )

Crespin v. United States of America 7:23-cv-348 )

Hostrander v. United States of America 7:23-cv-379 )

Smith v. United States of America 7:23-cv-387 )

Abarno v. United States of America 7:23-cv-329 )

Longo v. United States of America 7:23-cv-337 )

Ellis v. United States of America 7:23-cv-359 )

Estelle v. United States of America 7:23-cv-361 )

Hart v. United States of America 7:23-cv-378 )

Rivera v. United States of America 7:23-cv-396 )

Chapiewski v. United States of America 7:23-cv-417 )

Arbogast v. United States of America 7:23-cv-399 )

Danielson v. United States of America 7:23-cv-421 )

Rivera v. United States of America 7:23-cv-395 )

Cason v. United States of America 7:23-cv-416 )

Carlson v. United States of America 7:23-cv-425 )

James v. United States of America 7:23-cv-453 )

Hunt v. United States of America 7:23-cv-452 )

Brown v. United States of America 7:23-cv-463 )

Harris v. United States of America 7:23-cv-475 )

Houdlette v. United States of America 7:23-cv-489 )
)

Thomas v. United States of America 7:23-cv-495 )

Hamilton v. United States of America 7:23-cv-473 )

McCormick v. United States of America 7:23-cv-465 )

Harris v. United States of America 7:23-cv-477 )

Holt v. United States of America 7:23-cv-488 )

Masciangioli v. United States of America 7:23-cv-464 )

Holland v. United States of America 7:23-cv-486 )

Thomas v. United States of America 7:23-cv-494 )

Cook v. United States of America 7:23-cv-534 )

Stanley v. United States of America 7:23-cv-557 )

Turner v. United States of America 7:23-cv-498 )

Washington v. United States of America 7:23-cv-517 )

Riffe v. United States of America 7:23-cv-550 )

Webb v. United States of America 7:23-cv-504 )

Johnson v. United States of America 7:23-cv-520 )

Maners v. United States of America 7:23-cv-527 )

Zinn v. United States of America 7:23-cv-533 )

Nichols v. United States of America 7:23-cv-537 )

Pesce v. United States of America 7:23-cv-542 )

Walker v. United States of America 7:23-cv-499 )

McTiernan v. United States of America 7:23-cv-535 )

Raymond v. United States of America 7:23-cv-546 )

Stewart v. United States of America 7:23-cv-558 )

Barbuto v. United States of America 7:23-cv-562 )

Coriell v. United States of America 7:23-cv-566 )

Clifford v. United States of America 7:23-cv-574 )

Amrhein v. United States of America 7:23-cv-560 )

Cagiano v. United States of America 7:23-cv-569 )

)

4

Hajek v. United States of America 7:23-cv-580 )

Hagen v. United States of America 7:23-cv-805 )

King v. United States of America 7:23-cv-811 )

Budgell v. United States of America 7:23-cv-904 )

Phillips v. United States of America 4:23-cv-00061 )

Fiolek v. United States of America 4:23-cv-00062 )

Martinez v. United States of America 7:23-cv-00589 )

Hander v. United States of America 7:23-cv-00592 )

Roane v. United States of America 7:23-cv-00595 )

Ohlarik v. United States of America 7:23-cv-00605 )

Lemay v. United States of America 7:23-cv-00607 )

Jones v. United States of America 7:23-cv-00609 )

Smith v. United States of America 7:23-cv-00611 )

Moore v. United States of America 7:23-cv-00613 )

Brown v. United States of America 7:23-cv-00621 )

Geraghty v. United States of America 7:23-cv-00626 )

Rowland v. United States of America 7:23-cv-00627 )

Yake v. United States of America 7:23-cv-00633 )

Williams v. United States of America 7:23-cv-00634 )

Guidry v. United States of America 7:23-cv-00638 )

Galyon v. United States of America 7:23-cv-00639 )

Fuller v. United States of America 7:23-cv-00656 )

Yudt v. United States of America 7:23-cv-00657 )

Lawson v. United States of America 7:23-cv-00664 )

Hutchings v. United States of America 7:23-cv-00665 )

Reissman v. United States of America 7:23-cv-00681 )

Johnson v. United States of America 7:23-cv- )

5

00683          )

Joy v. United States of America 7:23-cv-00685 )

)

Bailey v. United States of America 7:23-cv-00686 )

)

Weekley v. United States of America 7:23-cv-00687 )

)

Acevedo v. United States of America 7:23-cv-00691 )

)

McGory v. United States of America 7:23-cv-00695 )

)

Christie v. United States of America 7:23-cv-00699 )

)

Ward v. United States of America 7:23-cv-00704 )

)

Leeper v. United States of America 7:23-cv-00707 )

)

Brooks v. United States of America 7:23-cv-00709 )

)

Mcclellan v. United States of America 7:23-cv-00715 )

)

Walker v. United States of America 7:23-cv-00719 )

)

Ciszek v. United States of America 7:23-cv-00720 )

)

Williams v. United States of America 7:23-cv-00723 )

)

Ganey  v. United States of America 7:23-cv-00729 )

)

Savage v. United States of America 7:23-cv-00732 )

)

OBrien v. United States of America 7:23-cv-00736 )

)

Hartman v. United States of America 7:23-cv-00738 )

)

Quinette v. United States of America 7:23-cv-00740 )

)

Hamilton v. United States of America 7:23-cv-00742 )

)

Coleman v. United States of America 7:23-cv-00745 )

)

Makinson v. United States of America 7:23-cv-00746 )

)

Morris v. United States of America 7:23-cv-00748 )

)

Colestock v. United States of America 7:23-cv- )

)

| | |
|---|---|
| 00755 | ) |
| Pearson v. United States of America 7:23-cv-00756 | ) |
| Lambert v. United States of America 7:23-cv-00769 | ) |
| Bulman v. United States of America 7:23-cv-00771 | ) |
| Brooks v. United States of America 7:23-cv-00774 | ) |
| Henninger v. United States of America 7:23-cv-00780 | ) |
| White v. United States of America 7:23-cv-00787 | ) |
| Brewster-Veira v. United States of America 7:23-cv-00794 | ) |
| Marbry v. United States of America 7:23-cv-00799 | ) |
| Young v. United States of America 7:23-cv-00801 | ) |
| Dawson v. United States of America 7:23-cv-00803 | ) |
| Burak v. United States of America 7:23-cv-00042 | ) |
| Davis v. United States of America 7:23-cv-00043 | ) |
| Hobbes v. United States of America 7:23-cv-00040 | ) |
| *Plaintiffs* | ) |
| v. | ) |
| United States of America, | |
| *Defendant* | |

## INTRODUCTION

On June 6, 2023, representatives from the Department of Justice, John Adam Bain, Bridget Bailey Lipscomb, Haroon Anwar, Elizabeth Platt, and Patrick J. Ryan, participated in a conference in Washington, DC, with James Edward Bell, III and Eric Flynn of the Bell Legal Group, Zina Bash and Warren Postman of Keller Postman LLC, and Mike Dowling of the Dowling Law Firm (via phone) on the above-captioned matters except for *Akers v. United States*

7

*of America*, 7:23-cv-00120. Counsel for Bell Legal Group, Keller Postman and The Dowling Firm appeared in their own capacity and as representatives of Jay Ward of McGowan Hood and James Roberts of Lewis & Roberts. On June 1, 2023, representatives from the Department of Justice, John Adam Bain, Bridget Bailey Lipscomb, Haroon Anwar, Elizabeth Platt, Allison O'Leary, and Patrick J. Ryan, participated in a conference in Washington, DC, with Joseph F. Rice (via video), Kevin Dean, Hank Young of Motley Rice LLC in *Akers v. United States*. The parties discussed the establishing of a discovery plan and trial schedule for cases pending before Judge Terrence Boyle in which the undersigned firms are counsel of record and Judge Boyle has issued an *Order for Discovery Plan*. The parties' positions are detailed below, with the United States' position italicized, for ease of differentiation.

Plaintiffs took the position that the parties should promptly propose a discovery plan for cases subject to an *Order for Discovery Plan*, regardless of whether the Court has appointed a plaintiffs' leadership group or established a global, coordinated case-management plan. Such a plan should allow the Court to begin conducting efficient group trials under Rule 42 (grouped by injury, for example). Plaintiffs note that cases were filed in an effort to afford the Court opportunities to achieve efficiencies by grouping filings by disease type to allow for "group" trials. This would allow more cases to be tried in less time than if they were tried individually. Plaintiffs have therefore included below their proposal for cases pending before Judge Boyle. While Defendant has not agreed to this plan, it has expressed its views on some elements of Plaintiffs' proposal, and Plaintiffs have modified their original proposal to reflect what they believe is a balanced and fair approach to discovery and trial should Judge Boyle wish to proceed without delay. Additionally, in the spirit of efficiency, Plaintiffs have worked with Defendant to identify points of agreement regarding appropriate case management in the event the Court

decides to appoint the leadership group led, in part, by the undersigned plaintiffs' firms. At the same time, Plaintiffs are eager to move forward with Defendant on discussions of a global resolution and, in parallel with preparing for litigation, have begun negotiating with Defendant a proposed questionnaire to serve as the basis for a global resolution matrix.

*The United States' position is that no dates should be set in individual cases until after the Court appoints plaintiff leadership and receives input from the parties on master pleadings, "a process for consolidating discovery, a process for phased discovery, a process for coordinating expert-related motions, a process for coordinating dispositive motions, a process for bellwether selection, a process for trials, and a process for settlement negotiations, "as contemplated in the April 25, 2023, initial case management order, signed by all four active District Judges.  In re: Camp Lejeune Water Litigation, No. 7:23-cv-00897-RJ, at Dkt. 1 (E.D.N.C. April 25, 2023) ("April 25 Order").  Conducting discovery and trial for cases that are filed earliest will not advance the global resolution of the litigation, but rather will divert the Court's and parties' resources.  Allowing time to organize and manage the global litigation will assist the Court and the parties in "formulating an ESI protocol, resolving issues associated with the scope of discovery, seeking input on use of stipulations to streamline discovery, and seeking input on some form of database with narrowly tailored questions seeking case crucial information for each plaintiff and the defendant."  Id.   Piecemeal litigation of individual cases in advance of accomplishing these steps on a global basis will not be efficient.  As the Manual for Complex Litigation (Fourth ed.) ("MCL") states with respect to mass tort cases, "Aggregation of similar claims can maximize fair and efficient case management, minimize duplication, reduce cost and delay, enhance the prospect of settlement, promote consistent outcomes, and increase procedural fairness.  MCL § 22.312.*

9

*The United States' position is that guidelines for the handling of multidistrict litigations, as articulated in the MCL and elsewhere are instructive. As the note to a new Fed. R. Civ. P. 16.1(1) for multidistrict litigation proposed by the Advisory Committee on Civil Rules recognizes "multiple actions in a single district" may present "similar management challenges" to a multidistrict litigation. The Duke Law School Guidelines and Best Practices for Large and Mass-Tort MDLs are applicable to the CLJA litigation in this Court. See Bolch Judicial Institute, Duke Law School, Guidelines and Best Practices for Large and Mass Tort MDLs (2d ed. Sept. 2018). The first guideline states that the objectives of case management are: "(1) the elimination of duplicative discovery; (2) avoiding conflicting rulings and schedules among courts; (3) reducing litigation costs; (4) saving the time and effort of the parties, attorneys, witnesses, and courts; (5) streamlining key issues; and (6) moving cases toward resolution (by trial, motion practice, or settlement)." Id. at 2. This is not accomplished by piecemeal litigation of individual cases, but by giving priority "to deciding issues broadly applicable to multiple claimants," Best Practice I(B)(iii); by "collaboratively develop[ing] a discovery plan," Best Practice I(C); and by "issuing a case management order approving plaintiff and defendant fact sheets, which can provide information useful for case management, relevant to selecting bellwether trials, and valuable for conducting settlement negotiations," Best Practice I(C)(v). Id. at 5, 10.*

*While the United States does not oppose grouping of certain cases for pretrial matters, the United States objects to holding multi-plaintiff or "group" trials because such an approach would complicate each trial, confuse the issues in each individual plaintiff's case, and unfairly prejudice the United States. This is particularly true where the CLJA places the burden of proving causation on plaintiff, and Fourth Circuit law is clear that a plaintiff must establish-*

10

*specific causation, which takes into account individual plaintiff-specific factors, in addition to general causation in a toxic tort case. See, e.g., Westberry v. Gislaved Gummi AB, 178 F.3d 257 (4th Cir. 1999) ("In order to carry the burden of proving a plaintiff's injury was caused by exposure to a specified substance, the plaintiff must demonstrate the levels of exposure that are hazardous to human beings generally as well as the plaintiff's actual level of exposure."); In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig., 892 F.3d 624, 647 (4th Cir. 2018) ("[A]ll fifty states typically require expert testimony to prove causation where the causal relationship is outside the common knowledge of lay jurors."); see also Figgs v. United States, Civ. No. 5:23-cv-00078-D-BM, Dkt. 9 (E.D. N.C. Mar. 20, 2023) (Dever, J.) (setting status conference in CLJA case to discuss "identity of expert witnesses on general causation and specific causation.").*

### PROPOSAL 1: PLAINTIFFS' PROPOSED DISCOVERY PLAN AND TRIAL SCHEDULE IN THE ABSENCE OF GLOBAL COORDINATION (CASES BEFORE JUDGE BOYLE)

1. **Certification of Conference**: Pursuant to Fed. R. Civ. P. 26(f), meetings were held on June 1, 2023, and June 6, 2023, in person. The meetings covered the above-captioned cases.

2. **Nature of Claims and Defenses**: The parties discussed the nature of claims and defenses. The parties discussed stipulations to limit the scope of discovery. The parties agreed that they could begin considering potential stipulations involving environmental conditions at the site, the findings of scientific studies, and the authenticity of government records to limit the scope of discovery so that final agreements on such stipulations can occur following the appointment of plaintiff leadership. The parties agreed that stipulations could limit the scope of discovery to contested issues and save resources.

   *The United States proposes postponing written discovery requests until after*

11

*attempting to negotiate appropriate stipulations. The United States proposes revisiting the scope of claims and defenses as the litigation progresses.*

3.      **Trial Plan**: Plaintiffs propose that the way to most efficiently try *Camp Lejeune Water Litigation* cases is by bundling cases with similar illnesses. This will allow a larger number of cases to be tried in a shorter period of time, provide consistency in the verdict range, allow efficient and orderly discovery, and support judicial economy. Plaintiffs propose that the Plaintiffs to be included in the first group trial be selected by July 10, 2023. Plaintiffs propose a first trial date of October 30, 2023.

*The United States' position is that no dates or trial plan should be set in individual cases until after the Court appoints plaintiff leadership and issues consolidated case management procedures across all CLJA cases, as contemplated by the April 25 Order. During the Rule 26(f) conference, the United States discussed how bellwether plaintiffs from the global CLJA pool could be selected for further discovery and trial to be representative of the larger group with the ultimate goal of reaching a global resolution of CLJA claim. The United States discussed different types of "top tier" claims, i.e., claims of diseases that the ATSDR's assessment of evidence has linked to contaminants at Camp Lejeune, as well as other prevalent claims of diseases in CLJA cases that ATSDR's assessment of evidence has not linked to contaminants at Camp Lejeune. The parties discussed how to select plaintiffs who are representative of all claimants.*

*The United States proposed that discovery proceed on three tracks: (1) a track for "top tier" diseases that the ATSDR's assessment of evidence has linked to contaminants in the Camp Lejeune water: kidney cancer, liver cancer, non-Hodgkin's lymphoma, leukemia, bladder cancer, qualifying cardiac defects, multiple myeloma, Parkinson's*

12

*disease, kidney disease (end stage renal disease), and systemic sclerosis/scleroderma; (2) a track for other prevalent diseases among the Plaintiff populations, such as lung cancer, breast cancer, prostate cancer, cervical cancer, and others that are found in a large number of CLJA claims; and (3) a track for miscellaneous claims.*

*The United States proposed for track 1, that discovery proceed on all issues for bellwether plaintiffs for those diseases, including fact discovery about the plaintiff's alleged claims, injuries, and damages, as well as expert discovery on general and specific causation. The United States proposed for track 2, that cases be grouped by disease, and that discovery of bellwether cases go forward only if plaintiffs can establish reliable evidence of general causation. Plaintiffs suggested that grouped cases for a specific disease could be assigned to an individual judge to avoid inconsistent rulings within the Court with respect to particular evidentiary findings regarding scientific reliability of general causation opinions for particular diseases. In certain circumstances, the Court could determine that a fact finder should make a general causation determination before allowing cases to proceed further. The United States proposed for track 3, that plaintiffs submit some evidentiary support as attested by an expert for a causal link between a condition and the Camp Lejeune water, before the case proceeds to a determination of whether there is reliable scientific evidence of general causation. The United States proposed that only if the case survives these threshold requirements, should a bellwether case proceed to discovery.*

4. **Initial Disclosures:** Plaintiffs propose that the parties exchange the information required by Fed. R. Civ. P. 26(a)(1) by July 24, 2023, for Plaintiffs selected to be in the first group trial, with further group disclosures due within 14 days after future groups of Plaintiffs are

selected for a trial date.

The United States proposed that initial disclosures be postponed until after the Court appoints plaintiff leadership and issues consolidated case management procedures across all CLJA cases, as contemplated by the April 25 Order, including the filing of a master complaint and master answer or other responsive pleading. The United States proposed that initial disclosures for plaintiffs as required by Rule 26(a)(1), could be confined to bellwether plaintiffs. The United States proposed that all plaintiffs be required to complete a negotiated plaintiff fact sheet.

The United States disclosed that Camp Lejeune had been extensively investigated with respect to environmental conditions, and is continuing to be investigated. The United States disclosed that available documents include analytical data, maps, reports, contracts and other documents from various agencies, including the Naval Facilities Engineering Command (https://www.navfac.navy.mil); the United States Marine Corps (https://clnr.hqi.usmc.mil/); the U.S. Environmental Protection Agency, both in relation to Camp Lejeune (https://cumulis.epa.gov/supercpad/cursites/csitinfo.cfm?id=0403185) and the ABC Cleaners (https://cumulis.epa.gov/supercpad/cursites/csitinfo.cfm?id=0402718); and the Department of Health and Human Services, Agency for Toxic Substances Disease Registry (http://www.atsdr.cdc.gov/sites/lejeune/index.html).

The United States offered to obtain records regarding individual plaintiffs who lived and/or were stationed at Camp Lejeune, such as housing records, service records and VA records. The United States represented that if Plaintiffs provided specific identifying information for individuals, including where applicable: full name; service

14

*branch; dates of service; social security number; service number; date of birth; date of discharge, retirement, or death; and government medical treatment facilities, including names, locations, and dates; then the United States could begin requesting records of relevant federal agencies. The United States indicated that it would also need to obtain a release and an agreement to abide by a Protective Order protecting personal information.*

*The United States agreed to begin discussing procedures for production of electronically stored information, whether through Technology Assisted Review or use of search terms. Plaintiffs indicated a need to identify relevant government personnel, and the United States indicated a willingness to work with Plaintiffs' counsel to identify personnel by subject area without the need for discovery requests. The parties discussed the need to identify relevant custodians and document repositories for purposes of collecting electronically stored information. The parties discussed the need to negotiate a global electronic discovery protocol, and the United States indicated that the parties would need to negotiate a Fed. R. Evid. 502(d) protective order with respect to privileged information.*

*The United States also agreed that upon execution of a Fed. R. Evid. 502(d) protective order, the United States would produce certain discovery materials that had been produced as part of the Federal Tort Claims Act (FTCA) Camp Lejeune litigation, including: (1) documents collected by the Marine Corps containing bate stamp numbers with the prefix CLW, and (2) documents collected by the "Drinking Water Fact-Finding Panel for Camp Lejeune." The United States indicated that it would also consider, after investigation into the files, production of other discovery material from the FTCA*

15

*litigation, including other document productions and deposition transcripts.*

5.    **Discovery Plan**: Plaintiffs propose to the Court the following discovery plan:

(a)    Discovery will be needed on the following subjects: Plaintiffs' claims under the Camp Lejeune Justice Act for injuries caused by exposure to contaminated water on Camp Lejeune.

(b)    Discovery will commence the date the Court enters a Scheduling Order. All discovery should be completed 30 days before trial.

(c)    Given the proposed group nature of the trials, Plaintiffs and Defendant may serve a reasonable number of Interrogatories in excess of those provided by the Federal Rules.

(d)    Given the proposed group nature of the trials and to streamline discovery, parties are allowed to serve a reasonable number of Requests for Admission beyond the limitation set forth in the Federal Rules.

(f)    A party may notice any deposition to be taken either in person or by videoconference.  The noticing party is responsible for the videoconferencing costs if they elect this deposition method. The Parties should seek methods to help reduce the costs of the stenographer and videographer, *i.e.*, if for example the deposition is taken by Zoom, the video of the deposition would suffice in lieu of a videographer.  *De bene esse* depositions shall be taken on or before 10 days prior to trial.

(g)    Plaintiffs shall disclose expert witnesses in accordance with Rule 26(a)(2) on or before August 1, 2023, and Defendant shall disclose expert witnesses in accordance with Rule 26(a)(2) on or before August 1, 2023. Plaintiffs' and Defendant's rebuttal

16

experts (if any) shall be disclosed in accordance with Rule 26(a)(2) within 21 days of Defendant's expert witness disclosure.

(h)    Supplementations under Rule 26(e) shall be due within a reasonable time without separate request, but no later than the end of the discovery period.

(i)    The parties will meet and confer regarding any needed ESI discovery protocol or orders, as well as any needed or requested protective orders.  Absent an agreement on these issues, they may be submitted to the Court for resolution.

(j)    At the time of this filing, the parties are unaware of issues about claims of privilege or the protection of trial-preparation materials.

*As outlined above, the United States' position is that no dates or trial plan should be set in individual cases until after the Court appoints plaintiff leadership and issues consolidated case management procedures across all CLJA cases, as contemplated by the April 25 Order. The April 25 Order anticipated coordinating litigation across CLJA cases, including by creating a "master complaint" and "master answer or other responsive pleading," as well as "a process for consolidating discovery, a process for phased discovery, a process for coordinating expert-related motions, a process for coordinating dispositive motions, a process for bellwether selection, a process for trials, and a process for settlement negotiations." April 25 Order. In any event, Plaintiffs' proposal to litigate dozens of individual cases simultaneously under an extremely compressed timeline is unworkable and unrealistic. Such an approach will not advance the global resolution of the litigation, but rather will divert the Court's and parties' resources. Furthermore, the United States does not agree to multi-plaintiff or "group" trials, nor does the United States*

17

*agree to the production of documents or information under the timelines proposed. Moreover, the United States does not agree that discovery should exceed the limits in the Federal Rules for individual cases. For the CLJA litigation as a whole, the United States is willing to confer regarding reasonable limits beyond what the Federal Rules provide. The United States does not agree that discovery taken in an individual case can be used in all cases absent consolidated case management procedures.*

6.    **Other Items**: The parties jointly request a hearing prior to the Court's entry of a Scheduling Order. Plaintiffs additionally propose to the Court the following additional items:

    (a)    Plaintiffs request a Case Management Conference before the Court, to begin June 28, and to continue once per month thereafter.

    (b)    Plaintiffs request an initial pre-trial conference on October 18, 2023, with at least one additional conference on October 25, 2023.

    (c)    Plaintiffs propose that Plaintiffs be allowed until 90 days before trial to amend the pleadings.

    (d)    Plaintiffs propose that Defendant should be allowed until 60 days before trial to amend the pleadings.

    (e)    Plaintiffs propose that all potentially dispositive motions should be filed by September 1, 2023. Plaintiffs, for example, believe there is a threshold question of statutory interpretation that would be appropriate for early resolution—specifically, that the CLJA sets out a special causation standard, under which causation is established solely by a showing that the type of harm suffered by Plaintiffs is causally linked to the water at Camp Lejeune. Plaintiffs have informed Defendant

18

of their intention to file a motion for partial summary judgment on this question of statutory interpretation in the next few weeks. Plaintiffs propose that responses to dispositive motions should be due 21 days after the Motions are served. Replies should be due 10 days after the Responses are served.

(f)     Plaintiffs are amenable to engaging in settlement discussions on any individual or group of cases upon request by Defendant.

(g)     Plaintiffs request a settlement conference no later than September 30, 2023. Plaintiffs are actively working on achieving a global resolution in parallel with preparing for litigation; they are, for example, in discussions with Defendant on a proposed questionnaire to serve as the basis for a global resolution matrix with values to be derived in part by the litigation process.

(h)     Plaintiffs propose that the parties' Rule 26(a)(3) disclosures (witness lists, designations of witnesses whose testimony will be presented by deposition, and exhibit lists) shall be produced 25 days before trial.

(i)     Plaintiffs propose that any objections to a party's Rule 26(a)(3) disclosures shall be made within 10 days from the 26(a)(3) disclosure date.

(j)     Plaintiffs at this time do not consent to trial by a U.S. Magistrate Judge; the United States does not take a position at this time.

(k)     Plaintiffs propose that all discovery produced by in this litigation including, but not limited to, documents, admissions, deposition transcripts, interrogatory responses, research, studies, government databases, records, factual information and other information/tangible items, will be applicable in all cases.

(l)     Plaintiffs propose that Defendant shall immediately, and in no instance later than

19

10 days from entry of the Court's Scheduling Order, take steps and actively seek to acquire and produce without discovery request, all of Plaintiff's military service records, as well as all medical records and health claims data.

(m)     Plaintiffs propose that Defendant shall produce, within 30 days of entry of the Court's Scheduling Order, any and all documents, studies (by Defendant or by non-governmental entities), materials related to the creation of any studies, all communication regarding any published or unpublished studies, materials related to sources of contamination, raw data and information that was gathered to assist with any studies, any memoranda from third parties or government contractors, any and all handwritten notes including those on any studies or documents, or other evidence of any kind in Defendant's custody or control relating to Camp Lejeune water during the relevant period. Such materials shall include, but not be limited to, internal memorandums, emails, notes, communications, reports, evidence of any kind relating to water or vapor contamination at Camp Lejeune, any and all reports (and drafts thereof) of any federal agency that in any way had anything to do with water or vapor contamination at Camp Lejeune.

(n)     Plaintiffs propose that Defendant shall produce, within 30 days of entry of the Court's scheduling Order, any liens or setoffs Defendant will claim under the CLJA as to each individual Plaintiff, including the amounts and documents/materials used to calculate the same.

(o)     Plaintiffs propose that all government records, documents[1], data and studies

---

[1] "Document" means and includes all "papers" of any kind or character, correspondence, writings, records, meeting

20

(including, but not limited to, those within the custody and control of Defendant or any government agencies, hospitals, departments or other similar entity) are self-authenticating and admissible subject to relevance.

(p)     Plaintiffs propose that any medical records from Plaintiffs' private health care providers are self-authenticating and admissible, subject to relevance, absent a specific general dispute as to authenticity including notice of such dispute at least 60 days prior to trial.

*As outlined above, the United States' position is that no dates or trial plan should be set in individual cases until after the Court appoints plaintiff leadership and issues consolidated case management procedures across all CLJA cases, as contemplated by the April 25 Order. The April 25 Order anticipated coordinating litigation across CLJA cases, including by creating a "master complaint" and "master answer or other responsive pleading," as well as "a process for consolidating discovery, a process for phased discovery, a process for coordinating expert-related motions, a process for coordinating dispositive motions, a process for bellwether selection, a process for trials, and a process for settlement negotiations." April 25 Order. In any event, Plaintiffs' proposal to litigate dozens of individual cases simultaneously under an extremely compressed timeline is unworkable and unrealistic. Such an approach will not advance the global resolution of the litigation, but rather will divert the Court's and parties' resources. Furthermore, the*

---

minutes, reprints, studies, evaluations, projections, analyses, presentations, memoranda, drawings, graphs, charts, books, statements, ledgers, financial records, checks, drafts, receipts, forms prescribed by government agencies, photographs, motion pictures, videotape, videodisc, audiotape or other sound recording, any method or medium by which information is utilized by computers, including e-mail, computer tapes, computer drives, computer discs, computer printouts, databases, photocopies, microfilm, microfiche and any other data, sound or image compilation or recording from which information regarding the described transactions can be obtained, translated if necessary by you through appropriate and necessary devices into reasonably usable and intelligible form.

21

*United States does not agree to multi-plaintiff or "group" trials, nor does the United States agree to the production of documents or information under the timelines proposed. Moreover, the United States does not agree that discovery should exceed the limits in the Federal Rules for individual cases. For the CLJA litigation as a whole, the United States is willing to confer regarding reasonable limits beyond what the Federal Rules provide. The United States does not agree that discovery taken in an individual case can be used in all cases absent consolidated case management procedures. The United States does not agree to any changes in the deadlines for briefing as provided by the local rules.*

### PROPOSAL 2: PROPOSED DISCOVERY PLAN AND TRIAL SCHEDULE IN THE EVENT OF GLOBAL COORDINATION

In the event the court desires coordinated management of the *Camp Lejeune Water Litigation* cases, Plaintiffs propose the following:

1. **Certification of Conference**: Pursuant to Fed. R. Civ. P. 26(f), meetings were held on June 1 and 6, 2023, in person. The meetings pertained to all cases in the above captions.

2. **Nature of Claims and Defenses**: The parties discussed the nature of claims and defenses. The parties discussed stipulations to limit the scope of discovery. The parties agreed that they could begin considering potential stipulations involving environmental conditions at the site, the findings of scientific studies, and the authenticity of government records to limit the scope of discovery so that final agreements on such stipulations can occur following the appointment of plaintiff leadership. The parties agreed that stipulations could limit the scope of discovery to contested issues and save resources.

   *The United States proposed postponing written discovery requests until after*

*attempting to negotiate appropriate stipulations. The United States proposed revisiting the scope of claims and defenses as the litigation progresses.*

3. **Trial Plan**: Plaintiffs propose that the way to most efficiently try *Camp Lejeune Water Litigation* cases is by bundling cases with similar illnesses. This will allow a larger number of cases to be tried in a shorter period of time, provide consistency in the verdict range, allow efficient and orderly discovery, and support judicial economy. Plaintiffs propose a first trial date of six months from the entry of any order setting forth the terms of a global consolidation of all *Camp Lejeune Water Litigation* cases ("Consolidation Order").

   (a) Plaintiffs propose that Plaintiffs be grouped by the illnesses afflicting them, and that these groups of Plaintiffs be divided among the Judges in this District, as determined by the Court; having all cases presenting the same illness tried by the same Judge could avoid duplication and promote efficiency and consistency.

   (b) Plaintiffs propose that Counsel for Plaintiffs shall notify Defendant of the selected cases to be tried together. Plaintiffs will select which case grouping is suitable for the first trial before each Judge in the District by 30 days from the entry of the Consolidation Order, with further groups to be designated on a rolling basis thereafter. Plaintiffs agree to discovery processes based on illness. For example, a process for diseases that the ATSDR's assessment of evidence has linked to contaminants in the Camp Lejeune water: kidney cancer, liver cancer, non-Hodgkin's lymphoma, leukemia, bladder cancer, qualifying cardiac defects, multiple myeloma, Parkinson's disease, kidney disease (end stage renal disease), and systemic sclerosis/scleroderma.

   *As outlined above, the United States' position is that no dates or trial plan should*

23

be set in individual cases until after the Court appoints plaintiff leadership and issues consolidated case management procedures across all CLJA cases, as contemplated by the April 25 Order. The April 25 Order *anticipated coordinating litigation across CLJA cases, including by creating a "master complaint" and "master answer or other responsive pleading," as well as "a process for consolidating discovery, a process for phased discovery, a process for coordinating expert-related motions, a process for coordinating dispositive motions, a process for bellwether selection, a process for trials, and a process for settlement negotiations."* April 25 Order. During the Rule 26(f) conference, the United States discussed how bellwether plaintiffs from the global CLJA pool could be selected for further discovery and trial to be representative of the larger group with the ultimate goal of reaching a global resolution of CLJA claim. The United States discussed different types of "top tier" claims, *i.e.*, claims of diseases that the ATSDR's assessment of evidence has linked to contaminants at Camp Lejeune, as well as other prevalent claims of diseases in CLJA cases that ATSDR's assessment of evidence has not linked to contaminants at Camp Lejeune. The parties discussed how to select plaintiffs who are representative of all claimants.

The United States proposed that discovery proceed on three tracks: (1) a track for "top tier" diseases that the ATSDR's assessment of evidence has linked to contaminants in the Camp Lejeune water: kidney cancer, liver cancer, non-Hodgkin's lymphoma, leukemia, bladder cancer, qualifying cardiac defects, multiple myeloma, Parkinson's disease, kidney disease (end stage renal disease), and systemic sclerosis/scleroderma; (2) a track for other prevalent diseases among the Plaintiff populations, such as lung cancer, breast cancer, prostate cancer, cervical cancer, and others that are found in a large

*number of CLJA claims; and (3) a track for miscellaneous claims.*

*The United States proposed for track 1, that discovery proceed on all issues for bellwether plaintiffs for those diseases, including fact discovery about the plaintiff's alleged claims, injuries, and damages, as well as expert discovery on general and specific causation. The United States proposed for track 2, that cases be grouped by disease, and that discovery of bellwether cases go forward only if plaintiffs can establish reliable evidence of general causation. Plaintiffs suggested that grouped cases for a specific disease could be assigned to an individual judge to avoid inconsistent rulings within the Court with respect to particular evidentiary findings regarding scientific reliability of general causation opinions for particular diseases. In certain circumstances, the Court could determine that a fact finder should make a general causation determination before allowing cases to proceed further. The United States proposed for track 3, that plaintiffs submit some evidentiary support as attested by an expert for a causal link between a condition and the Camp Lejeune water, before the case proceeds to a determination of whether there is reliable scientific evidence of general causation. The United States proposed that only if case survives these threshold requirements, should a bellwether case proceed to discovery.*

4. **Initial Disclosures:** Plaintiffs and Defendant will exchange the information required by Fed. R. Civ. P. 26(a)(1) 14 days after Plaintiffs are selected to be in group trials before each Judge.

*As outlined above, the United States proposes that initial disclosures should be postponed until after the Court appoints plaintiff leadership and issues consolidated case management procedures across all CLJA cases, as contemplated by the April 25 Order, including the filing of a master complaint and master answer or other responsive pleading.*

25

*The United States proposed that initial disclosures for plaintiffs as required by Rule 26(a)(1), could be confined to bellwether plaintiffs.*

5. **Discovery Plan**: Plaintiffs propose to the Court the following discovery plan:

 (a) Discovery will be needed on the following subjects: Plaintiffs' claims under the Camp Lejeune Justice Act for injuries and damages caused by exposure to contaminated water on Camp Lejeune.

 (b) Plaintiffs propose that discovery will commence the date the Court enters a Scheduling Order. Plaintiffs propose that all discovery should be completed 30 days before trial.

 (c) Plaintiffs propose that parties jointly negotiate a standardized plaintiff fact sheet to be completed by all Plaintiffs in lieu of individualized interrogatories and requests for production. Given the proposed group nature of the trials, Plaintiffs propose allowing a reasonable number of Interrogatories in excess of those provided by the Federal Rules, depending on the defenses raised and pursued by Defendant or other needs of the case.

 (d) Given the proposed group nature of the trials and to streamline discovery, Plaintiffs propose allowing a reasonable number of Requests for Admission beyond the limitation set forth in the Federal Rules, based on the defenses raised and pursued by Defendant or other needs of the case.

 (e) Plaintiffs propose that a party may notice any deposition to be taken either in person or videoconference. The noticing party is responsible for the videoconferencing costs if it elects this deposition method.

 (f) Plaintiffs propose that the number of depositions each party may take is subject to

26

negotiation between the parties, based on the defenses raised and pursued by Defendant or other needs of the case. Furthermore, each expert designated by Plaintiffs or Defendant is subject to a deposition by an opposing party.

(g)    Plaintiffs propose that absent an agreement among the parties, or a subsequent court order, fact and expert witness deposition testimony is limited to 1 day or 7 hours, exclusive of breaks. If a translator is required for a deposition, then the deposition testimony is limited to 8 hours, exclusive of breaks.

(h)    Plaintiffs propose that Plaintiffs shall disclose their expert witnesses in accordance with Rule 26(a)(2) on or before 60 days from the entry of the Consolidation Order, and Defendant shall disclose its expert witnesses in accordance with Rule 26(a)(2) on or before 60 days from the entry of the Consolidation Order. Plaintiffs' and Defendant's rebuttal experts (if any) shall be disclosed in accordance with Rule 26(a)(2) within 30 days of Defendant's expert witness disclosure.

(i)    Supplementations under Rule 26(e) shall be due within a reasonable time without separate request, but no later than the end of the discovery period.

(j)    The parties will meet and confer regarding any needed ESI discovery protocol or orders, as well as any needed or requested protective orders. Absent an agreement on these issues, they may be submitted to the Court for resolution.

(k)    At the time of this filing, the parties are unaware of issues about claims of privilege or the protection of trial-preparation materials.

As outlined above, the United States' position is that no dates or trial plan should be set in individual cases until after the Court appoints plaintiff leadership and issues consolidated case management procedures across all CLJA cases, as

27

contemplated by the April 25 Order. The April 25 Order anticipated coordinating litigation across CLJA cases, including by creating a "master complaint" and "master answer or other responsive pleading," as well as "a process for consolidating discovery, a process for phased discovery, a process for coordinating expert-related motions, a process for coordinating dispositive motions, a process for bellwether selection, a process for trials, and a process for settlement negotiations." April 25 Order. Furthermore, the United States does not agree to multi-plaintiff or "group" trials, nor does the United States agree to the production of documents or information under the timelines proposed. For the CLJA litigation as a whole, the United States is willing to confer about some limits beyond what the Federal Rules provide.

6. **Other Items**: The parties request a hearing prior to the Court's entry of a Scheduling Order. Plaintiffs propose to the Court the following additional items:

(a)    Plaintiffs request a pre-trial conference 14 days prior to the trial date, with at least one additional conference seven days before the trial date.

(b)    Plaintiffs are allowed until 60 days from the entry of the Consolidation Order or filing of an operative complaint to amend the pleadings.

(c)    Defendant should be allowed until 60 days from the entry of the Consolidation Order or filing of an operative complaint to amend the pleadings.

(d)    Plaintiffs propose that all potentially dispositive motions should be filed by 120 days from the entry of the Consolidation Order or filing of an operative complaint. Responses should be due 21 days after the Motions are served. Replies should be

28

due 14 days after the Responses are served.

(e)     Plaintiffs are amenable to engaging in settlement discussions on any individual or group of cases upon request by Defendant.

(f)     Plaintiffs request a settlement conference no later than five months from the entry of the Consolidation Order. The parties are actively working on achieving a global resolution in parallel with preparing for litigation; they are, for example, in discussions with Defendant on a proposed questionnaire to serve as the basis for a global resolution matrix with values to be derived, at least in part, from the litigation process.

(g)     Plaintiffs propose that the parties' Rule 26(a)(3) disclosures (witness lists, designations of witnesses whose testimony will be presented by deposition, and exhibit lists) shall be produced 25 days before trial.

(h)     Plaintiffs propose that any objections to a party's Rule 26(a)(3) disclosures shall be made within 10 days from the 26(a)(3) disclosure date.

(n)     Plaintiffs at this time do not consent to trial by a U.S. Magistrate Judge. The United States does not take a position at this time.

(o)     Plaintiffs propose that all discovery produced by Defendant in this litigation including, but not limited to, documents, admissions, deposition transcripts, interrogatory responses, research, studies, government databases, records, factual information and other information/tangible items, will be applicable in all cases.

(p)     Plaintiffs propose that Defendant shall immediately, and in no instance later than 10 days from entry of the Court's Scheduling Order, take steps and actively seek to acquire and produce without discovery request, all of Plaintiffs' military service

29

records, as well as all medical records and health claims data.

(q)    Plaintiffs propose that Defendant shall produce, within 30 days of entry of the Court's Scheduling Order, any and all documents, studies (by Defendant or by non-governmental entities), materials related to the creation of any studies, all communication regarding any published or unpublished studies, materials related to sources of contamination, raw data and information that was gathered to assist with any studies, any memoranda from third parties or government contractors, any and all handwritten notes including those on any studies or documents or other evidence of any kind in Defendant's custody or control relating to Camp Lejeune water during the relevant period.

(r)    Plaintiffs propose that Defendant shall produce, within 30 days of entry of the Court's Scheduling Order, any liens or setoffs Defendant will claim under the CLJA as to each individual Plaintiff, including the amounts and documents/materials used to calculate the same.

(s)    Plaintiffs propose that all government records, documents, data and studies (including, but not limited to, those within the custody and control of Defendant or any their agencies, hospitals, departments or other similar entity) are self-authenticating and admissible subject to relevance.

(t)    Plaintiffs propose that any medical records from Plaintiffs' private health care providers are self-authenticating and admissible, subject to relevance, absent a specific general dispute as to authenticity including notice of such dispute at least 60 days prior to trial.

*As outlined above, the United States' position is that no dates or trial plan should*

30

be set in individual cases until after the Court appoints plaintiff leadership and issues consolidated case management procedures across all CLJA cases, as contemplated by the April 25 Order. The April 25 Order anticipated coordinating litigation across CLJA cases, including by creating a "master complaint" and "master answer or other responsive pleading," as well as "a process for consolidating discovery, a process for phased discovery, a process for coordinating expert-related motions, a process for coordinating dispositive motions, a process for bellwether selection, a process for trials, and a process for settlement negotiations." April 25 Order. Furthermore, the United States does not agree to multi-plaintiff or "group" trials, nor does the United States agree to the production of documents or information under the timelines proposed. For the CLJA litigation as a whole, the United States is willing to confer about some limits beyond what the Federal Rules provide. Regarding settlement, the United States proposes that an approach modeled on the World Trade Center Litigation, as identified in the Court's April 25, 2023, Order, will provide the best chance for a global resolution. In re World Trade Ctr. Disaster Litig., 598 F. Supp. 3d 498 (S.D.N.Y. 2009).

In terms of a global resolution, Plaintiffs believe that a global settlement that uses a matrix to assess relevant factors and predict case values will be appropriate to efficiently resolve all of Plaintiffs' claims. The World Trade Center Litigation provides one helpful illustration of how to approach such settlements. Other mass settlements are helpful analogs, as well. Importantly, Plaintiffs believe that, unlike in the World Trade Center Litigation, early trials will likely be necessary here to set appropriate case values. That said, as the firms with the overwhelming number of cases in this Court, and soon to be in this Court, the Bell Legal Group and Keller Postman—along with the other undersigned

31

firms—are ready and eager to discuss a global-settlement structure in parallel with litigation.

Respectfully submitted this 16th day of June, 2023.

/s/ J. Edward Bell, III
J. Edward Bell, III (by Special Appearance)
Randolph L. Lee (N.C. Bar No.: 26469)
Eric W. Flynn (N.C. Bar No.: 57615)
Bell Legal Group, LLC
219 Ridge St.
Georgetown, SC 29440
Phone (843) 546-2408
jeb@belllegalgroup.com
eflynn@belllegalgroup.com

/s/ James A. Roberts, III
James A. Roberts, III (N.C. Bar No.: 10495)
Lewis & Roberts, PLLC
3700 Glenwood Avenue, Suite 410 (27612)
P. O. Box 17529
Raleigh, NC 27619-7529
Telephone: (919) 981-0191
jar@lewis-roberts.com

/s/ Zina Bash
Zina Bash (by Special Appearance)
Keller Postman LLC
111 Congress Avenue
Suite 500
Austin, TX 78701 956-345-9462
zina.bash@kellerpostman.com

/s/ W. Michael Dowling
W. Michael Dowling (NC Bar No. 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
Fax: (919) 529-3351
mike@dowlingfirm.com

/s/ Kevin R. Dean
Kevin R. Dean (By Special Appearance)
Joseph F. Rice (by Special Appearance)
Motley Rice LLC
28 Bridgeside Boulevard
Mount Pleasant, SC  29464
Telephone: (843) 216-9000
kdean@motleyrice.com

/s/ James L. Ward
James L. Ward, Jr. (N.C. Bar No. 24595)
McGowan, Hood, Felder, & Phillips, LLC
10 Shem Drive, Suite 300
Mount Pleasant, SC 29464
Telephone: (843) 388-7202
Fax: (843) 388-3194
jward@mcgowanhood.com

*Attorneys for Plaintiffs*

*/s/ Haroon Anwar*
HAROON ANWAR (IN Bar No. 29135-53)
Trial Attorney, Torts Branch
Environmental Tort Litigation Section
United States Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail:  haroon.anwar@usdoj.gov
Telephone:  202-305-3661
Fax:  202-616-4473

Attorney inquiries to DOJ regarding CLJA:
(202) 353-4426

*Attorney for Defendant*

33